FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

DEC 18 2009

CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE SEC, <br> Plaintiffs, <br> vs. <br> HOMESTEAD PROPERTIES, L.P., HOMESTEAD LIMITED, L.L.C., CALIFORNIA WEALTH MANAGEMENT GROUP, d.b.a. IFC ADVISORY, HEATH M. BIDDLECOME, and WILLIAM C. TAK, <br> Defendants, <br><br> HOMESTEAD NORTHLAND MHC, LLC, and JACKSON MHC, L.L.C., <br> Relief Defendants, | Case No.: SACV09-01331-CJC(MLGx) <br><br> **ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |

# INTRODUCTION

The Securities and Exchange Commission ("SEC") represented to the Court that Defendants Heath M. Biddlecome, William C. Tak, Homestead Properties, L.P., Homestead Limited, L.L.C., IFC Advisory and Relief Defendants Homestead Northland MHC, LLC and Jackson MHC, L.L.C. engaged in a fraudulent investment scheme targeted toward elderly investors. Based on the evidence presented by the SEC, the Court issued a temporary restraining order and order to show cause regarding a preliminary injunction on November 16, 2009. The SEC has now met its burden of showing that a preliminary injunction is necessary to prevent Defendants from violating the securities laws and defrauding or misleading investors. Accordingly, the Court will issue the appropriate preliminary injunction concurrently with this order.

# BACKGROUND

Defendant Heath M. Biddlecome is accused of perpetrating an investment adviser fraud against mostly elderly individuals that was designed to encourage investment in Defendant Homestead Properties, L.P. ("the Fund"). The Fund is not registered with the SEC. (Blau Decl., Ex. 10.) Homestead Limited, L.L.C. is a limited liability company formed by Mr. Biddlecome in 2007, and it is the Fund's general partner. (Blau Decl., Ex. 2.) Mr. Biddlecome is Homestead Limited's sole managing member. (Blau Decl., Ex. 13, at 76.) Defendant California Wealth Management Group, d.b.a. IFC Advisory ("IFC") is a corporation formed in 2004 that is wholly owned by Mr. Biddlecome, who also serves as its principal, president, and chief compliance officer. (Blau Decl., Exs. 3, 8-9.) Defendant William C. Tak is a senior vice president of IFC. (Blau Decl., Ex. 7-8.) IFC registered with the SEC as an investment advisor under the Advisors Act in January of 2005. (Blau Decl., Ex. 10.) IFC filed a Form ADV with the SEC in January 2008 that states it provides investment advice to the Fund. (Blau Decl. at ¶ 7, Ex. 9.) Mr.

Biddlecome and Mr. Tak are both former registered representatives of Purshe Kaplan and Sterling ("PKS"). Mr. Biddlecome resigned from PKS in March 2009 after the firm raised questions about the Fund. (Blau Decl., Ex. 6; ¶ 13, Ex. 29.) In July 2009, PKS terminated Mr. Tak's association. (Blau Decl., Ex. 7.) The SEC has also named two relief Defendants: Homestead Northland MHC, LLC ("Northland") and Jackson MHC, L.L.C. ("Jackson"). Northland is a limited liability company solely owned by the Fund, and it is listed as the borrower of a property located in Ohio that the Fund purchased in March of 2008. (Blau Decl., Exs. 17, 20.) Jackson is a limited liability company formed for the purpose of holding title to property that the fund purchased in January 2009. (Blau Decl., Ex. 18.) Mr. Biddlecome is Jackson's manager, and the Fund is the sole member of Jackson MHC. (Blau Decl., Ex. 18.)

From June 2007 to at least November 2009, the Fund raised over $9.8 million dollars from 34 investors, 33 of whom were between 60 and 97 years old. At the outset, the Fund provided investors with a private placement memorandum ("PPM"), which stated that the Fund would invest money for real property investments, specifically, mobile home park communities. Investors also received the Fund's Operating Agreement. The PPM provides that the Fund requires a seven year commitment period. (Decl. Blau, Ex. 13 at 76-77.) The PPM also states that there will be third party oversight of the Fund, including yearly audits. (*Id.*) Finally, the PPM states that commissions will be paid to "third parties who are registered broker dealers." (*Id.*) The Fund never conducted an audit, apparently because it believed it needed to save investor money. Additionally, the SEC alleges that the Fund never engaged the services of a registered broker dealer because Mr. Biddlecome and Mr. Tak were not operating under the supervision of PKS when they were making the Homestead offering. In October 2008, Mr. Biddlecome shifted $4.5 million of investor funds into a brokerage account and engaged in day trading. The SEC has provided evidence that investors were not advised of this change in investment strategy.

Based on these facts, the SEC filed an *ex parte* application for a Temporary Restraining Order ("TRO") on November 12, 2009. The Court granted the TRO and ordered an asset freeze, an appointment of temporary receiver Robb Evans & Associates, a prohibition against destruction of documents, and an Order to Show Cause why a preliminary injunction should not issue.

**LEGAL STANDARD**

The SEC appears "not as an ordinary litigant, but as a statutory guardian angel charged with safeguarding the public interest in enforcing the securities laws." *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir. 1975). In *SEC v. Unique Financial Concepts, Inc.*, 196 F.3d 1195, 1199 n.2 (11th Cir. 1999), the court explained that the SEC is entitled to a preliminary injunction when it establishes: "(1) a prima facie case of previous violations of federal securities laws; and (2) a reasonable likelihood that the wrong will be repeated."

**ANALYSIS**

The SEC has demonstrated a prima facie case of previous violations of federal securities laws and a reasonable likelihood that the violations will be repeated in the future without court intervention. Specifically, the SEC has provided substantial evidence that Mr. Biddlecome, the Fund, and Homestead Limited violated the antifraud provisions of securities laws, that Mr. Biddlecome and Mr. Tak violated the broker-dealer registration requirements of the Exchange Act, 15 U.S.C. § 78o(a), and that IFC violated, and Mr. Biddlecome aided and abetted IFC's violation of, the books and records requirements of the Investment Advisers Act, 15 U.S.C. §§ 80b-4.

### 1. Antifraud Provisions

#### a. Securities and Exchange Acts

The SEC has established a prima facie case that Mr. Biddlecome, the Fund, and Homestead Limited made material representations in violation of the antifraud provisions of the Securities and Exchange Acts of 1933 and 1934. These sections prohibit fraudulent conduct "in the offer or sale" and "in connection with the purchase or sale" of a security. 15 U.S.C. § 77q(a); 15 U.S.C. § 78j(b). The SEC asserts that Defendants (1) misrepresented that investor proceeds would be used for real estate investments only; (2) falsely stated that an accounting firm would conduct annual audits of the Fund's books; (3) falsely represented that sales of partnership interests would be through a broker-dealer registered to sell the offering; and (4) falsely stated that quarterly distributions would be made from accrued net profits. To state a claim under these sections, there must be evidence of (1) a misrepresentation or omission of material fact or deceptive device, (2) committed with scienter, (3) in the offer or sale, or in connection with purchase or sale, of a security. The SEC has met this burden.

Here, the "touchstone inquiry is not whether isolated statements within a document were true, but whether defendants' representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor regarding the nature of the securities offered." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002). The SEC has presented declarations of investors who were not aware that the Fund's investment strategy could be drastically altered from investment in mobile homes to speculative day trading, especially without notice to investors. (Decl. Charles Shimada; Decl. Hugo Pomrehn.) Though the Operating Agreement does state that "the [Fund] may also engage in any other lawful activities not

described above as the General Partner may from time to time determine," this phrase is buried between pages and pages explaining the Fund's primary focus, which is investment in mobile homes. (Decl. Heath Biddlecome, Ex. B at 11.) In fact, the Operating Agreement and PPM both have a picture of a home on the cover. (Decl. H. Biddlecome, Ex. B.) Moreover, the brokerage account was volatile, losing in excess of $1 million dollars in two months and gaining over $900,000 in two months. (Decl. Chang ¶ 17, Exs. 7-8.) Though Defendants present declarations of investors who state they either understood or now understand that their funds could be transferred to a brokerage account for day trading, most of the investors do not profess to have known that Mr. Biddlecome had diverted millions of dollars to the brokerage account in October 2008. Knowing that the Fund was going to be managed in this way would be material information to investors, and the SEC has made a showing that the PPM did, in fact, mislead investors into believing that their investments would be directed primarily toward real estate, not day trading. (Decl. Pomrehn at ¶ 8; Decl. Shimada at ¶ 5.)

Additionally, the PPM states that the Fund will engage an accounting firm to conduct an audit, yet Defendants admit that no audit has ever been completed. (Blau Decl., Ex. 13 at 76.) The Fund did not retain a firm for an audit until June of 2009, which is two years after it began raising money. (Opp. Br. at 31.) Though Defendants argue that this was to save investors money, the PPM misled investors into believing there would be regular third-party oversight over the Fund's activities. In light of the Fund's drastic change in investment strategy, an audit would have been material information for investors to have. The PPM's representations that there would be such audits provided investors with a false sense of security that their investments were being properly supervised.

The PPM also represented that a registered broker-dealer would oversee the Fund's sales. As addressed below, the SEC has provided persuasive evidence to demonstrate

that though Mr. Tak and Mr. Biddlecome were associated with PKS at the time they made the Homestead offering, they were not supervised by PKS while making the offering.

According to the PPM, the Fund was to make quarterly distributions of its accrued Net Profits. (Decl. H. Biddlecome, Ex. A at 4.) The PPM explained that the "quarterly distribution shall be based upon the expected net profits for that fiscal year, even though the actual Net Profits may vary from quarter to quarter. The variation could result in a return of net capital in a given quarter where the amount of quarterly distribution is greater than a Limited Partner's share of the Net Profits for that quarter." (Decl. H. Biddlecome, Ex. A at 4.) This portion of the PPM appears to have entitled the Fund to make distributions based on expected net profits. Yet, suspiciously, the Fund made $562,000 in distributions to certain Fund investors despite the fact that the Fund's unaudited financial statements showed that the Fund had incurred a net loss of nearly $380,000 during the same time period. (Decl. Chang ¶¶ 11, 14.) These distributions seem to be divorced from expected net profits. Additionally, at least one investor declared that he was understood that his distributions did not come from capital, but from revenue generated by the Fund, which was false. (Decl. Pomrehn at ¶ 9.)

The SEC has also shown that these misrepresentations were made with scienter. Scienter may be demonstrated by showing recklessness. *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990) (en banc). Recklessness is defined as "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* Since Mr. Biddlecome is the sole managing member of Homestead Limited, his intent may be imputed to the fund. *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1096 n.16 (2d Cir. 1972). Mr.

Biddlecome, the Fund, and Homestead Limited acted with scienter when Mr. Biddlecome transferred millions of dollars of investment funds to a brokerage account for day trading without informing investors of this change in strategy. Failing to disclose the Fund's potential investment in day trading and subsequent change in investment strategy constitutes a highly unreasonable omission that presents a danger of misleading buyers. Additionally, the Fund recklessly failed to disclose to investors that the Fund was not being audited and not being supervised by a registered broker-dealer. Finally, there is at least some evidence that some investors were told that their distributions were not returns of capital when they actually were. Since Mr. Biddlecome appears to have exclusive control over the Fund, permitting him to retain control where the SEC has presented prima facie evidence of a continuing violation of securities laws would put investors at serious risk of being misled or deceived by him.

### b. Investment Advisers Act

The SEC has also presented a prima facie case that Mr. Biddlecome and IFC have violated the antifraud provisions of the Investment Advisers Act. The Act defines an investment adviser as "any person, who for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11). Additionally, the Act prohibits any investment advisor from, directly or indirectly, employing any device, scheme or artifice to defraud any client or prospective client. 15 U.S.C. § 80b-6(1). Section 206(2) also prohibits any transaction, practice or course of business which operates as a fraud or deceit upon any client or prospective client. Section 206(4) prohibits investment advisers from, by the use of jurisdictional means, engaging in any act, practice, or course of business which is fraudulent, deceptive and manipulative. 15 U.S.C. § 80b-6(4). The SEC regulations provide that it is illegal for advisers to: (1) make any untrue statement of material fact or

omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to any investor or prospective investor in a pooled investment vehicle; or (2) otherwise defraud those investors or prospective investors. 17 C.F.R. § 275.206(4)-8.

The PPM states that Homestead Limited, the general partner, and Mr. Biddlecome, who was its sole principal, will manage all aspects of the Fund's business and would receive compensation for that work. (Decl. Blau, Ex. 13 at 92-93.) Additionally, the IFC filed a Form ADV in which it disclosed that it was the adviser to the Homestead Properties. (Decl. Blau, Ex. 10.) As noted above, the SEC has provided substantial evidence that investors were misled by the Fund's PPM and were not informed of the Fund's drastic change in investment strategy. As the Fund's investment advisers, Mr. Biddlecome and IFC had a duty to disclose these sorts of changes in investment strategy. *Jett v. Sunderman*, 840 F.2d 1487, 1493 (9th Cir. 1988). These disclosures would have been material to investors, and failing to disclose constituted a material omission. This is sufficient to establish a prima facie case of a violation of these provisions. Permitting Mr. Biddlecome to retain control over the Fund in light of the evidence of these serious misrepresentations could cause serious harm to investors.

### 2. Broker-Dealer Registration Requirements

The SEC has demonstrated a prima facie case that Mr. Biddlecome and Mr. Tak violated the broker-dealer registration requirements of the Exchange Act. 15 U.S.C. § 78o(a). Section 15(a)(1) of the Exchange Act requires brokers or dealers who "effect any transaction in, or induce or attempt to induce the purchase or sale of, any security" through interstate commerce to be registered with the Commission, and "it shall be unlawful for any broker or dealer which is . . . a natural person not associated with a broker or dealer which is a person other than a natural person to . . . effect any transaction

in, or induce or attempt to induce the purchase or sale of, any security" through interstate commerce. 15 U.S.C. § 78o(a). A "broker" includes "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(B)(4).

Mr. Biddlecome and Mr. Tak appear to meet the requirements of a broker since they were both involved in the Homestead offering. (Pomrehn Decl. at ¶¶ 5-7; Shimada Decl. at ¶¶ 4-5.) Additionally, the SEC has presented evidence that though Mr. Biddlecome and Mr. Tak were registered representatives of PKS at the time they offered and sold the partnership interests, they sold the offering without PKS's approval and supervision. (Blau Decl. at ¶ 13, Ex. 29.) *See Roth v. SEC*, 22 F.3d 1108, 1009 (D.C. Cir. 1994) ("If an individual is operating as a broker-dealer outside the scope of his employment, the employer's registration would seem to have little relevance."). Defendants state that they disclosed the offering to PKS, however, PKS's chief compliance officer sent Mr. Biddlecome an email on January 26, 2009, in which she stated that "PKS was unaware that you were participating in Homestead Properties LP and/or receiving selling compensation in connection therewith, PKS has neither supervised the transaction to date nor recorded same on its books and records." (Blau Decl., Ex. 29.) Additionally, the SEC has provided evidence that the Fund paid Mr. Tak nearly $400,000 in sales commissions, which contradicts the PPM's representations that commissions would be paid to a registered broker-dealer. (Chang Decl. at ¶ 12.) The SEC has made a prima facie showing that Mr. Biddlecome and Mr. Tak did not comply with the broker-dealer registration requirements.

### 3. Books and Records Requirement of the Investment Advisers Act

Section 204 of the Advisers Act requires investment advisers to create and maintain records that the SEC may examine. In December 2008, the SEC conducted a

routine examination of IFC. (Decl. Blau at ¶ 9.) During the examination, SEC staff requested numerous documents from IFC and Mr. Biddlecome, including IFC's balance sheet, income statement, and all custodial statements as of November 30, 2008. (Blau Decl. at ¶ 9, Ex. 11.) At this time, Mr. Biddlecome had already opened the brokerage account and transferred $4.5 million of investor funds, but he and IFC did not disclose this to the SEC and did not provide the brokerage account records in response to the SEC's request. (Decl. Blau at ¶ 9.) IFC omitted this information even though the brokerage account statements listed IFC as the Fund's "independent investment adviser." (Decl. Chang, Ex. 5.)

There are three elements for aiding and abetting under securities laws: (1) a primary or independent securities law violation committed by another party; (2) knowledge by an aider and abettor that his or her role was part of an overall activity that was improper; (3) that the aider and abettor substantially assisted the conduct that constitutes the violation. As IFC is wholly owned and controlled by Mr. Biddlecome, he was uniquely qualified to provide the SEC with documentation concerning the brokerage account, yet the SEC reports that he did not. IFC's apparent failure to provide the documentation is prima facie evidence of a violation of this section, Mr. Biddlecome would have known that this activity was improper, and his failure to disclose would have substantially assisted IFC in failing to produce required books and records for the SEC to examine. Accordingly, the SEC has made a prima facie case of violations of this section. Since IFC and the Fund are controlled by Mr. Biddlecome, enjoining Mr. Biddlecome and IFC from further present involvement with the Fund is the best way to protect investors from future violations.

The SEC has established a prima facie case that Defendants violated antifraud provisions of securities laws, broker-dealer registration requirements, and books and records requirements of the Investment Advisers Act. In light of the seriousness of these

violations, the Court is persuaded that continuing to allow the Fund to operate under Mr. Biddlecome's direction could present serious risk to investors, and appointment of a receiver to manage the Fund's affairs is necessary to protect them from future violations.

**CONCLUSION**

For the foregoing reasons, the SEC's motion for a preliminary injunction is GRANTED.

DATED: December 18, 2009

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE